UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CR-60124-RS

UNITED STATES OF AMERICA

v.

**JASON TODD FALEY,**

      Defendant.

_____/

**MOTION FOR VARIANCE**

COMES NOW, the Defendant, JASON T. FALEY, by and through his undersigned counsel who hereby submits this motion for variance in connection with his sentencing scheduled for January 31, 2024. Undersigned counsel recommends that Jason Faley receive a probationary sentence based upon the factors enumerated in 18 USC §3553(a), and as grounds therefore would state:

1.    The court must consider all 3553(a) factors before imposing a sentence. Section 3553(a) requires the court to impose a sentence sufficient, but not greater than necessary, based upon the following factors:

(A)    The nature and circumstances of the offense, and the history and characters of the defendant.

(B)    The need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to provide adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter.

(C)     The kinds of sentences available

(D)     The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant, as set forth in the guidelines.

(E)     Any pertinent policy statement

(F)     The need to avoid unwarranted sentence disparities among defendants with similar records, who have been found guilty of similar conduct

(G)     The need to provide restitution to any victim of the offense

## **ARGUMENT**

The Defendant respectfully requests this court consider a variance based on his minor role in the case, his addiction, and to avoid any disparity in sentencing.

## **ROLE IN THE OFFENSE**

Jason Faley was friends with Mark Vollaro primarily through sports at Boca Raton Regional High School. Sometime after that, Mr. Faley became addicted to opiates. Mr. Vollaro and other co-defendants were aware of his addiction.

In June 2013, Mr. Vollaro formed a telemarketing company, CHC. Although Mr. Faley is listed on the corporate documents submitted by Mr. Vollaro the Defendant did not own the company. Mr. Vollaro owned 100% of the shares of CHC. (See Exhibit 1)

At the time CHC was formed, Vollaro and Faley were the only employees at CHC, working out of a shared space in the office of Vollaro's family. In April 2014, Vollaro opened up a bank account as CEO of CHC. VOLLARO IS THE ONLY SIGNER ON THE BANK ACCOUNT(S).

In May/June 2014, CHC was administratively dissolved. (Possibly due to failure to pay the annual corporate fee, and/or failure to file an annual report) (See Exhibit 1)

The facts are clear that Mr. Vollaro formed CHC and named the Defendant COO, without the knowledge or consent of the Defendant. Once CHC was dissolved, the two person corporation, Vollaro as CEO, and Faley as COO, was legally non-existent. CHC made very little money in 2014.

In October 2014, Vollaro had the corporation reinstated. The only two employees at that time were Vollaro as CEO and Faley as COO (See Exhibit 1). During that time, CHC began to do business with USA Healthcare and their principals Anthony Loveland (co-defendat), Joseph Cavallo (co-defendant), and Meganne Chiasson (co-defendant).

From December 2014 through February 2015, Loveland, Cavallo, and Chiasson ceased working for USA Healthcare and began working for CHC.

AT THAT TIME, JASON FALEY IS DISPLACED AS COO.

In fact, Cavallo describes himself as COO in the emails sent out by CHC. (See Exhibit 2)

Loveland, Cavallo and Chiasson make significantly more money at CHC than Faley.

In April 2015, the annual report for CHC was filed with the Florida Department of State listing Vollaro as CEO. Jason Faley was <u>NOT</u> identified as a COO (See Exhibit 1). Even though Loveland, Cavallo, and Chaisson were involved with CHC for a relatively short time (eight months), they all made significantly more money than the Defendant who was employed at CHC from 2013 to 2017.

### <u>OTHER INDICIA OF JASON FALEY AS MINOR PLAYER</u>

1.      In November 2015, after the execution of a search warrant at CHC, co-defendant Vollaro retained the law firm of Broad and Cassell. In an email dated November 27, 2015, the lawyers advised co-defendant Vollaro they wish to interview employees at CHC. They identify as key employees Katie Clancy and Laura Tang. The lawyers did not identify Jason Faley as a key employee. (See Exhibit 3)

USA v. **JASON TODD FALEY**          CASE NO.: 21-CR-60124-RS

2.      Co-conspirator, Noah Silverman, who, along with his brother Alex Silverman, operated USA Healthcare, became a cooperator with the government. In a debriefing by AUSA, Dan Bernstein, DOD SA Bryan Hill, and others, Silverman described Jason Faley as a "puppet" working with Vollaro; a shark. (See Exhibit 4)

3.      In a debriefing of co-conspirator Chris Mucha (NuMed), Mr. Mucha described Jason Faley and others as minions of co-defendant Vollaro

**MITIGATING ROLE PURSUANT TO SENTENCING GUIDELINES**

The Sentencing Guidelines §3B1.2 discusses the criteria that should be considered in making a fact-based determination for evaluation of a role adjustment based on the totality of the circumstances that are heavily dependent upon the facts of the particular case. The Defendant requests a 2 (Two) level decrease in offense level as a minor participant.

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
> The fact that the defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

The discovery and trial testimony in this case, under an analysis of the above factors, support this role adjustment request.

4

(i) There is no evidence that the Defendant was aware of the scope and structure of the criminal activity in that he received income from CHC as either a W-2 employee or a 1099 independent contractor;

(ii) The Defendant had no authority in planning or organizing the criminal activity particularly when the USA Healthcare co-defendants Loveland, Cavallo, and Chiasson joined CHC. This event caused the Defendant to be replaced as the COO by Cavallo, an obvious demotion consistent with the amount of money paid to him.

(iii/iv) The evidence in this case is consistent with the Defendant being a puppet in his work at CHC. The Defendant had no decision making authority, nor ability to hire or fire. The Defendant did as he was told under the supervision and control of co-defendant Vollaro, with no discretion as to what he was told to do.

(v) The Defendant benefited from the criminal activity by having a steady job.

The remuneration he received over an extended period of time compared to co-defendants who made much more money over a shorter period of time, including those who received role reductions:

Garcia -2;

Engimann -2;

Margait -2;

Clark -3.

The Defendant respectfully submits that he was simply paid to perform certain tasks and had no proprietary interest in CHC, should be considered for an adjustment under this guideline.

## **MENTAL HEALTH ISSUE**

The Defendant would also request this court grant a variance based upon his opioid addiction.

5

USA v. **JASON TODD FALEY**          CASE NO.: 21-CR-60124-RS

This matter due to Federal HIPPA Laws will be filed under seal in a separate filing.

## DISPARITY IN SENTENCING

| Name | Sentence | Name | Loss Amount |
|---|---|---|---|
| Vollaro | 41 months | Vollaro | $2,560,965.00 |
| Garcia | 41 months | Engimann | $1,872,336.00 |
| Loveland | 30 months | **Cavallo** | **$936,098.00** |
| Chiasson | 30 months | Margait | $682,748.00 |
| Engimann | 30 months | Chiasson | $659,243.00 |
| Gousgounis | 24 months | Loveland | $576,919.00 |
| Margait | 24 months | Gousgounis | $463,849.00 |
| **Cavallo** | **3 yrs probation** | Garcia | $412,515.00 |
| **Clark** | **3 yrs sup. release** | **Clark** | **$247,294.00** |
| Heath | 3 yrs probation | Heath | $79,969.00 |

| Name | Sentence | Name | Loss Amount |
|---|---|---|---|
| Faley | | Faley | $170,175.00 |

| Name | Sentence | Name | Loss Amount |
|---|---|---|---|
| Alex Silverman Noah Silverman | 1 year and a day | Alex Silverman Noah Silverman | $5,000,000.00 |

Vollaro, Garcia, Loveland, Chiasson, Engimann, Gousgounis, Margait, Alex Silverman, and Noah Silverman will be seeking a sentencing reduction.

## SUMMARY

The Defendant, Jason Faley would respectfully request this court grant a downward departure or variance, for the reasons stated above. The Defendant, a low level employee at CHC without any access or control over the bank accounts of CHC should be considered for a roll adjustment. Furthermore, due to the nature of his employment within the family business, he is

required, and often does work seven days a week. From time to time, he needed to be available for emergencies involving the homes the business provides services to.

Jason Faley had no control over CHC bank accounts.

Faley had no authority to hire or fire anyone.

Faley had no control over the decision CHC (Vollaro) made as to business decisions.

Faley did not create any corporations as to enable him to hide the source of his funding.

Faley did not commit, nor was he charged with money laundering.

Faley aided and assisted the conduct of the conspiracy as alleged in Count II of the Indictment.

In US v. Clay 483 F3d 739 (11th circuit 2007), the court held that a sentencing court is required to consider critical characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend.

Matters, such as age, education, mental or emotional condition, medical condition, employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are matters that 3553(a) authorizes the sentencing judge to consider.

The P.S.R. and letters accompanying this motion for variance, Jason Faley is a caring son and brother, and is well respected in the community. (See Exhibit 5 - Character Letter in support of the Defendant)

The family business, JDF Property Management, considers their son, the Defendant Jason Faley, essential to the success of the company, which employs mom (age 60+), dad (age 60+) and the Defendant, Jason Faley. The Defendant is responsible for work done at the homes they manage, including plumbing, carpentry, electricity, computers, woodwork, drywall repairs, painting, etc. He works seven days a week and is on-call 24 hours a day. Jason is required to stay

USA v. **JASON TODD FALEY**          CASE NO.: 21-CR-60124-RS

overnight, for a week, or longer as a part of his duties. His trustworthiness is obvious as he maintains homes while the owner is away.

   **WHEREFORE**, the Defendant, Jason Faley, respectfully requests that this Court grant the Motion for Variance.

<u>**CERTIFICATE OF SERVICE**</u>

   I HEREBY CERTIFY that on January 18, 2024, I served and filed the foregoing document with the Clerk of the Court via CM/ECF.

         CHRISTOPHER A. GRILLO, P.A.
         Attorney for Defendant
         One East Broward Boulevard
         Suite 700
         Fort Lauderdale, FL 33301
         Tel: (954) 524-1125
         Email: chrisgrilloatty@aol.com
         BY: <u>**/S/ Christopher A. Grillo**</u>
          Christopher A. Grillo, Esq.

8

# *EXHIBIT 1*

# Electronic Articles of Incorporation For

P13000052500
FILED
**June 18, 2013**
**Sec. Of State**
jshivers

COMPLETE HEALTHCARE CONCIERGE, INC.

The undersigned incorporator, for the purpose of forming a Florida profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:

COMPLETE HEALTHCARE CONCIERGE, INC.

## Article II

The principal place of business address:

12718 OAK RUN CT
BOYNTON BEACH, FL.  33436

The mailing address of the corporation is:

12718 OAK RUN CT
BOYNTON BEACH, FL.  33436

## Article III

The purpose for which this corporation is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:

1

## Article V

The name and Florida street address of the registered agent is:

MARK L VOLLARO
12718 OAK RUN CT
BOYNTON BEACH, FL.  33436

I certify that I am familiar with and accept the responsibilities of registered agent.

Registered Agent Signature:   MARK VOLLARO

P13000052500
FILED
June 18, 2013
Sec. Of State
jshivers

# Article VI

The name and address of the incorporator is:

MARK VOLLARO
12718 OAK RUN CT.

BOYNTON BEACH, FL. 33436

Electronic Signature of Incorporator:   MARK VOLLARO

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

# Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

> Title:  CEO
> MARK L VOLLARO
> 12718 OAK RUN CT
> BOYNTON BEACH, FL.   33436

> Title:  COO
> JASON T FALEY
> 2817 SW 11TH PLACE
> DEERFIELD BEACH, FL.   33442

# Article VIII

The effective date for this corporation shall be:

06/18/2013

# 2014 FOR PROFIT CORPORATION REINSTATEMENT

**FILED**
**Oct 06, 2014**
**Secretary of State**

DOCUMENT# P13000052500

**Entity Name:**  COMPLETE HEALTHCARE CONCIERGE, INC.

**Current Principal Place of Business:**

12718 OAK RUN CT
BOYNTON BEACH, FL  33436

**New Principal Place of Business:**

1021 S. ROGERS CIRCLE
6
BOCA RATON, FL  33487

**Current Mailing Address:**

12718 OAK RUN CT
BOYNTON BEACH, FL  33436

**New Mailing Address:**

1021 S. ROGERS CIRCLE
6
BOCA RATON, FL  33487

**FEI Number: 46-2989397**      **FEI Number Applied For ( )**      **FEI Number Not Applicable ( )**      **Certificate of Status Desired ( )**

**Name and Address of Current Registered Agent:**

VOLLARO, MARK L
12718 OAK RUN CT
BOYNTON BEACH, FL  33436     US

**Name and Address of New Registered Agent:**

VOLLARO, MARK L
1021 S. ROGERS CIRCLE
BOCA RATON, FL  33487     US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE:   MARK VOLLARO                                                    10/06/2014

                    Electronic Signature of Registered Agent                              Date

## OFFICERS AND DIRECTORS:

Title:        CEO
Name:      VOLLARO, MARK L
Address:  1021 S. ROGERS CIRCLE
City-St-Zip:  BOCA RATON, FL  33487

Title:        COO
Name:      FALEY, JASON T
Address:  2817 SW 11TH PLACE
City-St-Zip:  DEERFIELD BEACH, FL  33442

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE:   MARK VOLLARO                          CEO                      10/06/2014

                    Electronic Signature of Signing Officer or Director                    Date

# 2015 FLORIDA PROFIT CORPORATION ANNUAL REPORT

DOCUMENT# P13000052500

**Entity Name:** COMPLETE HEALTHCARE CONCIERGE, INC.

**FILED**
**Apr 10, 2015**
**Secretary of State**
**CC8735078667**

**Current Principal  Place of Business:**

1901 S. CONGRESS AVE
 SUITE 150
BOCA RATON,  FL  33426

**Current Mailing Address:**

12718 OAK RUN CT.
BOYNTON BEACH,  FL  33436  US

**FEI Number: 46-2989397**                              **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

VOLLARO, MARK L
12718 OAK RUN CT
BOYNTON BEACH, FL  33436  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                                          Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | CEO |
| Name | VOLLARO, MARK L |
| Address | 12718 OAK RUN CT. |
| City-State-Zip: | BOYNTON BEACH  FL  33436 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: MARK VOLLARO                                    CEO                             04/10/2015

Electronic Signature of Signing Officer/Director Detail                                              Date

# 2016 FLORIDA PROFIT CORPORATION ANNUAL REPORT

DOCUMENT# P13000052500

**Entity Name:** COMPLETE HEALTHCARE CONCIERGE, INC.

**FILED**
**Apr 29, 2016**
**Secretary of State**
**CC0754476892**

**Current Principal Place of Business:**

1901 S. CONGRESS AVE
 SUITE 150
BOYNTON BEACH , FL 33426

**Current Mailing Address:**

1901 SOUTH CONGRESS AVENUE
 SUITE 150
BOYNTON BEACH, FL 33426 US

**FEI Number:** 46-2989397

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

VOLLARO, MARK L
1901 SOUTH CONGRESS AVENUE
 SUITE 150
BOYNTON BEACH, FL 33426 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent             Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | CEO |
| Name | VOLLARO, MARK L |
| Address | 1901 SOUTH CONGRESS AVENUE SUITE 150 |
| City-State-Zip: | BOYNTON BEACH FL 33426 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: MARK VOLLARO             CEO             04/29/2016

Electronic Signature of Signing Officer/Director Detail             Date

# *EXHIBIT 2*

## Re: :::IMPORTANT::: LOCUM TENENS & CHC INC TELE-MED DOCTORS

| | |
|---|---|
| From: | Joseph Cavallo <joey@virtualhealth.care> |
| To: | Mansher Singh <themansher@gmail.com> |
| Cc: | Vanessa Orsino <vanessa@virtualhealth.care>, katie@chcinc.net |
| Sent: | March 6, 2015 3:21:26 PM EST |
| Received: | March 6, 2015 3:21:34 PM EST |

Hi Doctor Singh,

I have my staff assigning patients over to you right now.   Please let me know if you do not receive any within the hour.

### Joseph Anthony Cavallo

Chief Operating Officer

http://www.virtualhealth.care
Tele: (561) 860-5611
Fax:  (561) 922-6636

In compliance with "HIPAA" (rule 104-91), this message is intended only for use of the individual or entity to which it is addressed & may contain information that is privileged, confidential & exempt from disclosure under applicable law. If the reader of this electronic message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or it was forwarded to you without permission from Virtual Healthcare. please forward this email back to sender at the email address above, DELETE this email from all mailboxes & any other electronic storage medium & DESTROY all copies.

**From:** Mansher Singh <themansher@gmail.com>
**Date:** Friday, March 6, 2015 at 3:12 PM
**To:** Joseph Cavallo <Joey@virtualhealth.care>
**Cc:** Vanessa Orsino <vanessa@virtualhealth.care>, "katie@chcinc.net" <katie@chcinc.net>
**Subject:** Re: :::IMPORTANT::: LOCUM TENENS & CHC INC TELE-MED DOCTORS

I have not received a single consult since joining.

Sent from my iPhone

On Mar 6, 2015, at 15:05, Joseph Cavallo <joey@virtualhealth.care> wrote:

Good Afternoon,

This is Joey Cavallo, COO of Virtual Healthcare / Complete Healthcare Concierge (chcinc.net).  First I would like to thank you for your participation in our tele-med network as well as your patience through the transitional process in our joint venture with Locum Tenens.  I know that there might have been some difficulties during the process while we were merging the network, as the temporary system that was put in place was a little bit clunky.   Overall we are very pleased at its success, as it has afforded us the time needed to finalize our online CRM which we will be rolling out the beginning of next week.

Our new CRM will significantly improve the workflow between our patients & yourself along with providing very detailed reporting & recording of the process.   This should increase productivity & reduce any mistakes.  Training on the new CRM will begin Tuesday & it will occur twice per day, the first being at 10am eastern & the second at 3pm eastern via a live webinar.  Training will take about 20 minutes for me to go through the basic functionality of the software, after which, you will have the ability to ask direct questions & get more in-depth  descriptions of the various features.  Upon

completing the general training, I will also be available to spend time individually with you if you feel the need, as to insure your comfortability with the software.

An email will be sent out Monday with all of the log-in information needed for you to participate in the training.  If for some reason you are unavailable for training at the specified times, please contact Vanessa Orsino via email, vanessa@virtualhealth.care, as she will be assisting me in organizing the trainings.

Thank You again for your effort & we look forward to continuing our business together in a much higher effectiveness in the near future.

### Joseph Anthony Cavallo

Chief Operating Officer

http://www.virtualhealth.care
Tele: (561) 860-5611
Fax:  (561) 922-6636

In compliance with "HIPAA" (rule 104-91), this message is intended only for use of the individual or entity to which it is addressed & may contain information that is privileged, confidential & exempt from disclosure under applicable law. If the reader of this electronic message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or it was forwarded to you without permission from Virtual Healthcare. please forward this email back to sender at the email address above, DELETE this email from all mailboxes & any other electronic storage medium & DESTROY all copies.

<9CFAB847-194B-4120-9DE6-477B42B553EF[117].png>

127405

USA v. **JASON TODD FALEY**         CASE NO.: 21-CR-60124-RS

# *EXHIBIT 3*

| | |
|---|---|
| **From:** | Lana Teng <lana@virtualhealth.care> <lana@virtualhealth.care> |
| **Sent time:** | 11/27/2015 11:09:35 AM |
| **To:** | 'Mark Vollaro' <mark@chcinc.net>; 'Lana Teng' <LANA@CHCINC.NET> |
| **Subject:** | RE: Memorandum |
| **Attachments:** | image001.jpg   image002.jpg   image003.jpg   image004.png   image005.jpg   image006.jpg |

Will distribute the memo to employees on Monday morning…they can come in anytime to interview the staff. Keep in mind our 10AM sales meeting so let me know if you want me to reschedule that.

Lana

**From:** Mark Vollaro [mailto:mark@chcinc.net]
**Sent:** Friday, November 27, 2015 10:23 AM
**To:** Lana Teng <LANA@CHCINC.NET>
**Subject:** Fwd: Memorandum

**Mark Vollaro**
*CEO/President*
**Complete Healthcare Concierge, Inc.**
**1901 S. Congress Ave.**
**Suite# 150**
**Boynton Beach, FL. 33426**
(866)954-8281 ext: 101 **Main**
(561)305-4649 **Mobile**
(561)922-6636 **Fax**
**www.chcinc.net**

fales-logo[2]

**CONFIDENTIALITY NOTICE:**
In compliance with "HIPAA" (rule 104-91), this message is intended only for use of the individual or entity to which it is addressed & may contain information that is privileged, confidential & exempt from disclosure under applicable law. If the reader of this electronic message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or it was forwarded to you without permission from Complete Healthcare Concierge, Inc. please forward this email back to sender at the email address above, DELETE this email from all mailboxes & any other electronic storage medium & DESTROY all copies.

Begin forwarded message:

> **From:** Gabriel Imperato <gimperato@broadandcassel.com>
> **Date:** November 27, 2015 at 10:09:03 AM EST
> **To:** 'Mark Vollaro' <mark@chcinc.net>
> **Cc:** Benton Curtis <bcurtis@broadandcassel.com>, Joseph Picone <jpicone@broadandcassel.com>, Janet Cody <jcody@broadandcassel.com>
> **Subject:** RE: Memorandum

Mark, I am good with this memo. I would send it out to your current employees as soon as practical.
Ben Curtis had a chance to have a brief chat with Assistant United States Attorney Dan Bernstein late Wednesday afternoon. Mr. Bernstein stated that Complete Healthcare Concierge, Inc.("CHC") was a subject leaning to target of the Federal investigation being conducted by the Department of Defense Criminal Investigative agents. However, he also indicated that he was not up to speed on the facts of the case and was not prepared to discuss any facts related to CHC at this time. He asked that we connect with him to revisit in about two weeks. We believe the DOD agents are a bit "out ahead" of the U.S. Attorney's office in conducting the investigation and have not communicated any confirmed facts concerning CHC to Mr. Bernstein at this time. Ben also asked Dan Bernstein if he would agree to coordinate contacts with your current employees with us and avoid ex parte contacts with your

current employees. As this does tie into the attorney-client privilege issue, do not agree to not agree to contact your employees directly without going thru counsel(hence an important reason to disseminate the memo to your current employees as soon as practical). Accordingly, for these reasons we believe it will be important to begin to interview at least your key current employees as soon as it can be arranged. We are prepared to visit your office on Monday and begin interviews of "key employees" that may be available(Katie? Ms. Tang? You will have to guide us a bit on this, but basically those employees who would have the most information about aspects of the business). Please let me know if this can be arranged so we can make the necessary plans. I would have Ben Curtis and Joe Picone from our Firm arrive at your office in Boynton Beach as soon as you can accommodate them on Monday.

If you would like to discuss on the phone you can call me at the office this morning at 954-745-5223 or on my cell at any time at 954-494-1532.



**Gabriel Imperato**
MANAGING PARTNER
100 S.E. 3RD AVENUE
SUITE 2700
FORT
LAUDERDALE, FL
33394
TELEPHONE:
954.764.7060
FACSIMILE: 954.761.8135

**BIO**

DIRECT LINE: (954) 745-5223
DIRECT FACSIMILE: (954) 713-0965
E-MAIL: gimperato@broadandcassell.com

www.broadandcassell.com

---

**From:** Mark Vollaro [mailto:mark@chcinc.net]
**Sent:** Wednesday, November 25, 2015 2:37 PM
**To:** Gabriel Imperato
**Subject:** FW: Memorandum
**Importance:** High

Please review and approve.

**Mark Vollaro**
*CEO/President*
**Complete Healthcare Concierge, Inc.**
**1901 S. Congress Ave.**
**Suite# 150**
**Boynton Beach, FL. 33426**
(866)954-8281 ext: 136 **Main**
(561)305-4649 **Mobile**
(561)922-6636 **Fax**
www.chcinc.net





**CONFIDENTIALITY NOTICE:**
In compliance with "HIPAA" (rule 104-91), this message is intended only for use of the individual or entity to which it is addressed & may contain information that is privileged, confidential & exempt from disclosure under applicable law. If the reader of this electronic message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or it was forwarded to you without permission from Complete Healthcare Concierge, Inc. please forward this email back to sender at the email address above, DELETE this email from all mailboxes & any other electronic storage medium & DESTROY all copies.

**From:** Lana Teng [mailto:Lana@chcinc.net]
**Sent:** Wednesday, November 25, 2015 2:23 PM
**To:** mark@chcinc.net

USA v. **JASON TODD FALEY**          CASE NO.: 21-CR-60124-RS

# *EXHIBIT 4*



**INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
DEFENSE CRIMINAL INVESTIGATIVE SERVICE
FORT LAUDERDALE RESIDENT AGENCY
1475 W. CYPRESS CREEK ROAD, SUITE 200
FORT LAUDERDALE, FLORIDA  33309-1954

**2016001026-20FL-I10**                                    **October 17, 2016**

**SILVERMAN, NOAH** *(et al)*

**PROFFER INTERVIEW OF NOAH DAVID SILVERMAN:** On October 17, 2016, the
Reporting Agent (RA) and Assistant United States Attorney (AUSA) Dan Bernstein of the
Southern District of Florida (Miami, FL) interviewed Noah David Silverman at the United States
Attorney's Office in Miami, FL.

Also present was Silverman's attorney Joseph Rosenbaum.  Prior to beginning the interview,
AUSA Bernstein emphasized the importance of any statements Silverman provides and that they
must be truthful.  Silverman stated that he understood and was satisfied with the advice of his
attorney.

Silverman resides at 3374 N.W. 28th Avenue, Boca Raton, FL 33434, SSN:  XXX-XX-3931,
cell number is (561) 929-3171.  He graduated from Olympic Heights high school (West Boca,
FL).  His work experience was mostly comprised of working as a commodities broker and then
in the field of marketing focusing on healthcare products.  Silverman stated that he passed the
test to receive his Series Three commodities broker license in 2007 as he was 21 years of age at
the time.  As a broker he was involved in trading/selling oil, gas, 90-day options, and precious
metals.  The names of the businesses he was associated with were Hartford Metals, New Bridge
Commodities, and Palm Beach Commodities.  Silverman related that the U.S. Commodity
Futures Trading Commission (CFTC) a government agency designed to prohibit fraudulent
conduct in the trading of futures contracts investigated his company but they were never charged.

Silverman told those interviewing him that his brother Alex Silverman was also working
alongside him as well.  They left the commodities business and were unemployed for
approximately (9) months trying to land a job.  They began networking with several individuals
they had previously done business with and the "buzz" on the street was marketing for
healthcare.

According to Silverman, while he and his brother were networking they bumped into Steven
Churchill, advising he was big in the leads business for things such as healthcare, securities,
student loans, and credit repair to name a few.  He said that Churchill advised he was looking to
find someone he could do business with especially as it relates to a call center generating leads
locating patients for healthcare products.  Silverman stated that the three of them Churchill,
Alex, and Noah started a business called Smart Time Marketing where they were generating

CLASSIFICATION:

**FOR OFFICIAL USE ONLY
LAW ENFORCEMENT SENSITIVE**

DCIS Form 1 MAY 2015

WARNING
The information in this document marked FOUO-LES is the property of the Department of Defense Inspector
General and may be distributed within the Federal Government (and its contractors) to law enforcement,
public safety and protection, and intelligence officials and individuals with a need to know. Distribution to other
entities without prior DoD IG authorization is prohibited. Precautions shall be taken to ensure this information
is stored and destroyed in a manner that precludes unauthorized access. Information bearing the FOUO-LES
marking may not be used in legal proceedings without prior authorization from the originator. Recipients are
prohibited from posting information marked FOUO-LES on a website or unclassified network.

2016001026-20FL-I10                                                                4

## INTRODUCTION TO MARK VOLLARO

Silverman said that he was working with an individual by the name of Dana Levine and she was friends with Mark Vollaro and her comment to Silverman was that Vollaro was a "shark" with telemedicine which meant he was doing very well. He said Levine assisted in facilitating a meeting with Vollaro at the USA Healthcare office.

According to Silverman, Vollaro and Jason Faley (his business partner and in Silverman's words a "puppet") came to meet with him at the USA Healthcare office in Boca Raton. Also present for this meeting was Anthony Loveland, Alex Silverman, and Luis Garcia. According to Silverman, subsequent meetings took place at their office (USA Healthcare) and all four (both Silverman's, Loveland, and Garcia) were present as well for the follow-up meetings as they are all able to corroborate what Vollaro and Faley said or what they talked about. During the initial meeting Vollaro was pitching telemedicine to USA Healthcare personnel advising that he was a partner with a company called Tele Doc and they had many prescribers in their network and they were responsible for generating more than 100 million dollars a year. Silverman told Vollaro that USA Healthcare was operating in a successful manner and they (Silverman and Vollaro) discussed incorporating their businesses together to make more money. Silverman also advised that First Care MD from Texas was also heavily in business with Vollaro and the guy in charge of this company was named Chris O'Hara. He knew that First Care MD was providing telemedicine services to USA Healthcare through Vollaro and his company Complete Healthcare Concierge (CHC) where teledoc services were available 24 hours a day. Silverman told the RA that when he first started doing business with Vollaro he had a fixed amount established for what he called "rendered services" in the amount of $90.00 per teledoc consult. Silverman said he renegotiated with Vollaro and got it down to $60.00 per consult. Silverman advised that the doctor would get $30.00 to $40.00 of the consult fee and then Vollaro and O'Hara would split the remaining amount. Silverman said he does not think there was much TRICARE coming through with Vollaro as he did most of the prescriptions for compounding medications with CHC through Oldsmar Pharmacy (Tampa, FL) and this was where the 10% payment on the back end occurred from the final adjudicated amount. Silverman added that his commission/kickback agreement with Vollaro would have also been paid by checks written to Vollaro as the amounts would have been "bleeded" over from payments in other checks that Silverman was paying to Vollaro.

Silverman stated that he and Vollaro began to have a falling out as they (USA Healthcare) believed he was not delivering the services that he promised and what they paid for. Silverman's said he knew that patients were calling in and complaining that they had never talked with a doctor, the prescriptions were not coming back in a timely manner, they (USA Healthcare) felt that CHC's technology was lacking. Silverman said he received numerous complaints about patients not talking to a doctor, as he had his office personnel (USA Healthcare) call the patient and check with them by phone as they verified a phone call with a doctor never occurred.

CLASSIFICATION:

**FOR OFFICIAL USE ONLY
LAW ENFORCEMENT SENSITIVE**

DCIS Form 1 MAY 2015

WARNING
The information in this document marked FOUO-LES is the property of the Department of Defense Inspector General and may be distributed within the Federal Government (and its contractors) to law enforcement, public safety and protection, and intelligence officials and individuals with a need to know. Distribution to other entities without prior DoD IG authorization is prohibited. Precautions shall be taken to ensure this information is stored and destroyed in a manner that precludes unauthorized access. Information bearing the FOUO-LES marking may not be used in legal proceedings without prior authorization from the originator. Recipients are prohibited from posting information marked FOUO-LES on a website or unclassified network.

USA v. **JASON TODD FALEY**          CASE NO.: 21-CR-60124-RS

# *EXHIBIT 5*



Access Recovery Solutions
16244 S. Military Trail, Building 100, Suite 110 Delray Beach, FL 33484
Phone: 561-865-2550    Fax: 561-865-2558

November 14th, 2023

To: Whom It May Concern:

Re: Program Attendance/ Patient: Jason Faley

The purpose of this letter is to provide an overview of our State and federally licensed opiate treatment program in which the above referenced patient is enrolled. This letter is generally provided to employers, corrections officials, or other persons who have an interest in the patient, and is only released in accordance with a valid release of information waiver the patient has signed. Information of this nature is protected by Federal confidentiality laws and may not be further released or divulged without the patient's expressed consent.

The patient was admitted on, October 10th, 2019 for treatment of a chemical dependency. As part of that treatment the patient is receiving prescribed daily 110 mg of Methadone in oral form. The daily methadone eliminates opiate/opioid cravings, prevents onset of any withdrawal illness, and serves to establish a blockade effect against other opiate/opioid use. As part of treatment the patient attends the program daily and meets with their counselor in accordance with a pre-established schedule of individual sessions once a week. The patient's progress in treatment is determined by the patient meeting predetermined treatment plan goals and daily attendance. It can take a month to get the correct dose to help stop all urges of illicit drug use. Patient does report this program has helped with daily urges and triggers. UA may still show illicit drugs (fentanyl) in the urine as it does take a month or so to get out of one's system. Without the daily dose of the methadone program my patient could relapse.

While the treatment provided is long-term in nature, patient motivation is always a prerequisite to treatment success. The intent of this letter is to provide verification of the patient's enrollment. Additionally, Patient has been compliant with all treatment protocol including daily dosing, individual counseling sessions and refrain from all illicit substance use. If you have any further questions, please feel free to contact.

Sincerely,

Sara Fuller, Counselor

Access Recovery Solutions

P: 561-865-2550

JANUARY 7, 2024

KIMBERLY FALEY
66 SW 15TH AVE
BOCA RATON FL 33486

TO WHOM IT MAY CONCERN

HI AND THANK YOU FOR THE TIME AND THE CONSIDERATION TOWARDS MY SON
JASON AND HIS CASE.

SINCE HE WAS A LITTLE BOY HE WAS THE LITE OF OUR LIVES. HE ALWAYS WAS
INVOLVED IN SOME KIND OF SPORT ACTIVITY FROM AGE 6 TO HIGH SCHOOL.
HE STARTED PLAYING SOCCER THEN BASEBALL, HOCKEY AND FOOTBALL.
HE WAS ALWAYS CHOSEN FOR THE TRAVEL TEAMS AND PLAYED UP FOR HIS AGE. HE
WAS VERY TALENTED IN SPORTS.
HE NEVER MISSED A DAY OF SCHOOL OR CCD WHEN ATTENDING FOR HIS
CONFIRMATION AT CHURCH. DEVOTED TO HIS COMMITMENTS.
HE ALWAYS HELPED US AROUND THE HOUSE. HE BABYSAT FOR HIS BROTHERS
WHEN NEEDED WHEN MOM AND DAD WERE AT WORK. COMMITTED TO HIS FAMILY.
AS HE GRADUATED FROM HIGH SCHOOL AND WENT TO COLLEGE FOR 1 1/2 YEARS AT
FAU HE WORKED FOR OUR FAMILIES  BUSINESS PART TIME.
NOW HE IS FULL TIME FOR OUR BUSINESS. HE IS AN ASSET TO THE COMPANY.
VERY TALENTED IN DOING THE THINGS OUR BUSINESS REQUIRES FROM HANDYMAN
WORK, ELECTRICAL, PLUMBING, WOODWORK, DRYWALL REPAIRS, PAINTING,
COMPUTERS, WIFI ISSUES YOU NAME IT, HE TACKLES IT PROFESSIONALLY. ALWAYS
ABLE TO FIGURE IT ALL OUT.
OUR BUSINESS, PROPERTY MANAGEMENT OFFERS IT ALL AND HE IS VERY SMART
AND INTELLIGENT PERSON. ALL OUR CLIENTS LOVE HIM.
HE IS GOOD TO HIS 2 BROTHERS AND HIS FAMILY. I WANT YOU TO KNOW HE IS A VERY
GOOD PERSON ALL AROUND. OUR CLIENTS ALL SAY SO AND REQUEST HIM WHEN
NEEDED ALWAYS SAYING HOW GREAT OF A KID HE IS TO US AND THREW TEXT
MESSAGES.
OUR BUSINESS HAS GROWN QUITE A BIT SINCE JASON HAS BEEN A PART OF IT.
HE IS VERY MUCH NEEDED. HE WORKS 7 DAYS A WEEK 4-6 HOURS A DAY.
HE ALSO STAYS OVER NIGHT  AT CLIENTS PROPERTIES TO WATCH ANIMALS WHEN
NEEDED FOR OUR COMPANY.
I COULD NOT GET MY CLIENTS INVOLVED WITH OUR PERSONAL BUSINESS,
IF I COULD, EVERYONE OF THEM WOULD OF WRITTEN A BEAUTIFUL LETTER ABOUT
HOUSE HONEST AND GREAT OF A KID HE IS.

THANK YOU FOR YOUR TIME.      KIMBERLY FALEY (JASONS MOM)

Jeremy Faley
66 SW 15th Avenue
Boca Raton, Fl 33486
Jeremyfaley@yahoo.com
561-716-0821


To the honorable Judge,

My brother, Jason, puts a lot of pride into helping people. Just yesterday, he helped me hang my TV on my wall. His precision towards making sure everything was level amazed me. In his line work, this is the type of consistency he performs. It doesn't matter if he's your sibling, client or just a friend he wants to help. I witnessed this the other day. The relationship he had with a client was irreplaceable. As we went there for one job, they asked him to do another. He spent another 30 minutes trying to help them out with their computer. These types of skills people rely on him for. Not just that, they trust him!

There aren't enough words to describe how genuine my brother is. I never have to ask him; he shows up anyway. He never asks for anything in return. There have been multiple times he has helped me with my car after a long day/week of work. For instance, we spent hours in the hot sun attempting to lift my car for an oil change. Come to find out there was no oil in the tank due to an oil leak. Instead of him being resentful for wasting his time, he attempted to spot the leak. After another hour, we couldn't solve the issue. Jason proceeded to give me the number to a mechanic who he had had a new-found relationship towards. When I called Lena, she started off by giving him praise and saying how much she cared for Jason.

In October, I found myself in need of a job transition. Jason was there for me, again. He knew I had time on my hands. In my search for new opportunities, Jason introduced me to the stock market. He provided me with exceptional levels of education. Every day he comes across something new and informational, he will forward it to me. We spend countless hours communicating making sure we are on the right track psychologically. His encouraging demeanor means a lot. The ups and downs of daily life can break anyone. My brother and I are no stranger to that. We had a huge setback one morning. I felt discouraged. Jason sent me a text to let me know that these things will happen, and we will be alright. During the time I was unemployed, Jason kept me grounded and provided me with the hope that there would be bad days but never let it break you.

Knowing my inexperience in automotives, he never lets me go about it alone. I wouldn't have replaced my brakes, fixed my motor regulator, hung up my tv nor gained the knowledge in stocks without his help. He has saved me a bunch of time and money because of his selfless and generous character. He continues to keep me level-headed each day and pushes me forward. He whole-heartedly cares for anyone in his path. I couldn't be prouder to have a brother, a friend, like Jason. Thank you for your time and I ask that this letter be received as a true representation of Jason Faley.

January 10, 2024


To whom it may concern,


I am writing in reference to Jason Faley.  I have known Jason his entire life.  During childhood and adolescence, he was involved in athletics and an outstanding student athlete. As a young man I know Jason to be hardworking and a high achiever.  He is a quiet, kind and thoughtful person who helps his parents and others anytime.   He is the type of man who takes the time to write his old cousin very sweet sentiments on her birthday. I believe Jason will go forward being diligent and committed to worthy and honorable pursuits in the future. Jason has a loving and supportive family who will be there for him if the need arises.  Thank you for your time and consideration.


Sincerely,

Cynthia Patrick

January 11, 2024

Honorable Judge,

My nephew, Jason Faley, has always been kind and compassionate,

and he has grown into a true gentleman.

He has a desire to help others without expecting anything in return.

During my husband's illness, Jason offered support and encouragement.

I am forever grateful for his love and empathy.

Jason takes the initiative to learn how to do many things

which has helped his parents business become successful.

I know they would be lost without him.

Jason possess many fine qualities which contribute to a better society.

Please consider this letter in the outcome of his case.

Respectfully yours,

Victoria Bocchino

I've had the privilege of calling Jason my friend for over 25 years, and I can confidently say he is one of the most intelligent individuals I've ever known. From our early days playing baseball together as kids to navigating the challenges of high school, Jason consistently displayed a remarkable intellect. His sharp mind and quick problem-solving abilities set him apart, making him the go-to person for insightful advice and innovative ideas. Over the years, Jason's intelligence has only deepened, making him a source of inspiration and wisdom in both personal and professional spheres.

Beyond his brilliance, Jason's unwavering support has been a cornerstone of our enduring friendship. In moments of joy and challenges, he has been there for me, offering a listening ear, thoughtful guidance, and genuine camaraderie. Our shared experiences on the baseball field created a strong bond that has withstood the test of time. Jason's loyalty and reliability make him not just a friend but a pillar of strength in my life. His ability to combine intellect with empathy makes him an exceptional companion and someone I am grateful to have by my side for the past 25 years.

Reflecting on our journey from childhood to adulthood, the memories of playing baseball together hold a special place in our shared history. Jason's passion for the game, coupled with his dedication and teamwork, made our experiences on the field memorable and enjoyable. These shared moments fostered a sense of camaraderie that has transcended the sports field, creating a lasting foundation for our enduring friendship.

Bryan Zech

To whom it may concern:

I have known Jason Faley for nearly 10 years. In that time he has helped me by watching my dogs while I travel, helping with work around my house and my family's house, and in working with his family's business to help me over and above. I find Jason to be completely trustworthy. He is kind, caring and compassionate. I wouldn't leave my dogs and house with anyone so unconditionally and without worry as I have with Jason.

MY NAME IS DAVID M. BARRY I LIVE AT

16 802 CHARLES RIVER DR. KNOWN AS THE BRIDGES

DELRAY BEACH FL. 33446. I LIVE HERE 6 MONTHS

A YEAR AND 6 MONTHS IN LEOMINSTER MASS 01453

I AM VERY PROUD TO GIVE A CHARACTER

REFERENCE FOR JASON FAILEY

I MET JASON THRU THE COMPANY OF

HIS MOTHER + FATHER OPERATES. THEY WATCH

MY HOME WHEN I LEAVE TO MASS. THIS HAS

BEN 7YRS ASSOCIATED WITH THEIR COMPANY

THEY ALSO HELP ME OUT DOING CARPENTRY

PLUMBING, COMPUTER NEEDS WITH JASON

RUNNING THE SHOW. JASON IS -

VERY HONEST

VERY DEPENDABLE

VERY CRAFTY - CARPENTER - COMPUTERS

PLUMBER - ELECTRICTY -

RESPECTS HIS PARENTS VERY MUCH

GREAT PERSONALITY - INTELLIGENT

GETS THE JOB DONE

RESPECTFULLY, David M. Barry

ROCKWELL
ROOFING, INC.

DAVID BARRY
President

978-537-7825
Fax: 978-537-4132

44 POND STREET
LEOMINSTER, MA 01453

# To Whom It May Concern

I have had the pleasure of having Jason as my petsitter and property manager for over five years, and I cannot speak highly enough of his dedication and professionalism. In his role as a petsitter, Jason has consistently provided exemplary care for my animals. His reliability is unmatched, always ensuring that my pets receive the attention, love, and routine they need. I trust Jason implicitly to manage their well-being, and his commitment to their happiness and health has been unwavering.

As a property manager, Jason performance has been exceptional. Over the years, he has demonstrated a keen sense of responsibility in overseeing various aspects of property maintenance. From handling repairs promptly to conducting thorough inspections, Jason attention to detail has preserved the integrity of the property. His proactive approach to addressing issues has made my experience as a homeowner stress-free. In every aspect, Jason has proven himself as a reliable and capable professional, making him an invaluable asset as both a petsitter and property manager.

Frank

To whom it may concern,

If you are considering hiring Jason to take care of your beloved pets, do not hesitate. Jason has taken excellent care of my  two dogs for three years. He is not only reliable, kind and loving, but a great communicator as well.

My dogs are always happy and healthy when I return home, it's like I never left. I never worry when I'm away because I am confident my dogs are incredibly well taken care of. Jason is so much more than a dog sitter. For us, he has become like family. If you want trustworthy, loving care for your pets, consider Jason.

-Rachael Schmidt